## In re Robert B. and Deborah J. McShinsky

[572 A.2d 916]

No. 88-312

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed February 9, 1990

*Mayer, Berk & Obuchowski*, South Royalton, for Appellants.

*Jeffrey L. Amestoy*, Attorney General, and *Conrad W. Smith*, Assistant Attorney General, Montpelier, for Amicus Curiae.

**Gibson, J.** Plaintiffs appeal from the Environmental Board's denial of an Act 250 land-use permit to construct a recreational vehicle (RV) campground on the shores of the White River. We affirm.

## I.

Plaintiffs seek to build an RV campground on a 4.3-acre parcel of land located in the Village of South Royalton between Route 14 and the White River. The campground would accommodate up to twenty recreational vehicles between mid-April and mid-October each year. The project would entail (1) the construction of a road to serve the campground; (2) the construction of lot sites for 20 RVs; (3) the expansion of an existing building to provide showers and bathrooms; (4) the addition of water lines, sewer lines, and a dump station; and (5) the expansion of an existing leachfield. Several of the RV lot sites would be located within twenty feet of the river bank and forty feet of the river. The site of the proposed project is now an open meadow bounded on the south and west by the river, on the north by the highway, and on the east by a working farm. A small commercial building and a mobile home are currently located on the field, which is separated from the river by low-lying vegetation and several mature trees.

Plaintiffs initially filed an Act 250 permit application with the District #3 Environmental Commission, which denied the request after a hearing. Plaintiffs appealed to the Environmental

Board (Board), which also denied the permit application following a de novo hearing and a guided site visit. The Board concluded that the proposed project failed to satisfy the Act 250 criteria in four respects: (1) the project would have an undue adverse impact on the scenic and natural beauty of the area, (2) plaintiffs' proposal would neither effectively screen the campground from the water nor protect the river bank from erosion, (3) the project would interfere with the public's access to and enjoyment of the river, and (4) it would not conform with the local regional plan. On appeal to this Court, plaintiffs contend that the Board's findings and conclusions were not supported by the evidence presented at the hearing.

## II.

Before discussing the evidence, we first address the burdens imposed by Act 250, the type of evidence the Board may rely on, and the standard by which we review appeals from the Board's decisions. Under 10 V.S.A. § 6088, any party opposing a project has the burden of showing an undue adverse impact on aesthetics, while the applicant has the burden as to the other criteria. Either party's burden, however, may be satisfied by evidence introduced by any of the parties or witnesses, *In re Quechee Lakes Corp.*, — Vt. —, —, 580 A.2d 957, 963 (1990), or by evidence gathered during a site visit as long as it does not constitute the exclusive basis for the Board's decision. *Id.* at —, 580 A.2d at 961–62.

Moreover, this Court applies a deferential standard of review where the sufficiency of the evidence is challenged on review. *Id.* at —, 580 A.2d at 963. 10 V.S.A. § 6089(c) provides that "[t]he findings of the board with respect to questions of fact, if supported by substantial evidence on the record as a whole, shall be conclusive." Evidence is substantial if it is relevant and a reasonable person might accept it as adequate to support a conclusion. *Quechee,* — Vt. at —, 580 A.2d at 963. Further, where there is conflicting evidence, resolution of the conflict lies with the Board as the trier of fact. *In re Southview Associates*, 153 Vt. 171, 178, 569 A.2d 501, 504–05 (1989); *Quechee,* — Vt. at —, 580 A.2d at 963. "'Thus, it is not for this Court

to reweigh conflicting evidence, reassess the credibility or weight to be given certain testimony, or determine on its own whether the factual decision is mistaken.'" *Quechee*, — Vt. at —, 580 A.2d at 963 (quoting *In re Wildlife Wonderland, Inc.*, 133 Vt. 507, 511, 346 A.2d 645, 648 (1975)).

### A.

Three of the four Act 250 criteria at issue touch upon the Board's central concern: that plaintiffs' proposed project is incompatible with the surrounding environment because it would detract from the natural beauty of the immediate area as well as the recreational uses that flourish therein.

The Board first concluded that plaintiffs had failed to satisfy criterion 1(F). Under 10 V.S.A. § 6086(a)(1)(F), the applicant must demonstrate that a proposed shoreline development "must of necessity be located on a shoreline in order to fulfill [its] purpose," and that the development will, "insofar as possible and reasonable in light of its purpose," (i) retain the shoreline in its natural state, (ii) allow continued recreational access to the water, (iii) provide vegetation that will screen the development from the waters, and (iv) stabilize the bank from erosion with vegetation cover. The Board did not address whether plaintiffs had shown that the development needed to be located on a shoreline, but instead concluded that plaintiffs had not met subcriteria (iii) and (iv). Plaintiffs claim that the findings do not support the Board's conclusion that plaintiffs' proposed tree plantings would be insufficient to screen the campground, and that the banks of the river would erode as a result of foot traffic from the campground. Plaintiffs also contend that the Board should have analyzed the "possible and reasonable" language of the statute and that it could have retained jurisdiction in order to evaluate the screening at a later date and impose conditions if necessary.

 Upon reviewing the evidence, we conclude that the Board could reasonably have determined that plaintiffs had not met their burden of demonstrating, "insofar as possible and reasonable in light of its purpose," that the project would be screened from the water and would protect shoreline vegeta-

tion. We do not believe the phrase "insofar as possible and reasonable in light of its purpose" means that the Board must accept every proposed shoreline development project, regardless of its purpose and impact on the shoreline, merely because the applicant is doing what he or she feels is possible or reasonable. See *In re Southview Associates*, 153 Vt. at 175, 569 A.2d at 503 (statutory language should not be construed so as to "render the legislation ineffective or irrational"). Nor must the Board design an adequate project for an applicant or issue a permit and retain oversight to assure that the applicant is doing all that is "reasonable and possible" to meet the relevant subcriteria. Rather, criterion 1(F) requires that the Board make its own determination that a development need be located on the shoreline and that, considering the purpose of the development, "possible and reasonable" measures have been taken to protect the shoreline. There was sufficient evidence to support the Board's findings and conclusions regarding criterion 1(F).

### B.

The Board also rejected plaintiffs' Act 250 permit application because the project would have an undue adverse impact on the scenic and natural beauty and aesthetics of the area. See 10 V.S.A. § 6086(a)(8).* Applying a two-pronged analysis developed in an earlier Board decision, the Board first determined that the proposed project would have an adverse aesthetic impact because it would not be in harmony with its surroundings; the Board then proceeded to consider whether the adverse impact would be undue.

Plaintiffs do not contest the Board's method of analysis or its authority to regulate development solely on the basis of aesthetics; rather, they claim that the Board's conclusions are not supported by the record. We disagree. Besides the site visit and the numerous pictorial exhibits depicting the area near the site,

---

* 10 V.S.A. § 6086 provides: "Before granting a permit, the board or district commission shall find that the subdivision or development:

. . . .

(8) Will not have an undue adverse effect on the scenic or natural beauty of the area, aesthetics, historic sites or rare and irreplaceable natural areas."

the Board heard testimony regarding the nature and scale of surrounding commercial enterprises. Though several small commercial businesses exist near the site, none of them are so large or so close to the river as to detract significantly from the view of the river and the rural setting. Further, there was evidence that there would be substantial noise from the campground and that the campground would significantly intrude upon the scenic beauty of the area. Indeed, Mr. Stevenson, the regional commission's senior planner who testified in favor of the project, conceded that the site would be intensely used and that the project would have an adverse effect on aesthetics.

■ Plaintiffs contend, however, that there is no evidence to suggest that any adverse effect would be "unduly" adverse. Under the second prong of the Board's analysis, an adverse impact is undue if any one of three tests is answered in the affirmative: 1) Does the project violate a clear, written community standard intended to preserve the aesthetics or scenic, natural beauty of the area? 2) Does the project offend the sensibilities of the average person? 3) Have the applicants failed to take generally available mitigating steps which a reasonable person would take to improve the harmony of the proposed project with its surroundings? The Board found it unnecessary to address the first inquiry, but concluded that the project failed to survive the second and third inquiries.

■ Plaintiffs contend that the Board's conclusion regarding the second inquiry was not supported by the evidence because the Board cannot assume the role of an average person in the community and there was no general public outcry against the project. We cannot agree. By statute, the Board, not the average person in the community, is required to determine whether a development will have an undue impact on the aesthetics of an area. Further, in making that determination, the Board need not poll the populace or require vociferous local opposition in order to conclude that an average person would consider the project to be offensive.

In addition to the evidence that substantial noise would emanate from the campground and that the project would have an adverse effect on the scenic beauty of the area, the Board heard

testimony that the proposed project was offensive and that all of the RV sites would be visible from Route 14. Further, although the regional commission's senior planner testified that the campground would not be shocking to the average person, he also testified that "the planting plan when fully developed will greatly mitigate the *shock* of seeing the twenty RVs." (Emphasis added.) The evidence supports the Board's determination that the project would offend the sensibilities of the average person.

Because an affirmative answer to any one of the three inquiries means the project would have an undue adverse impact, we need not examine the Board's determination regarding the third inquiry. Nevertheless, we note that the evidence concerning the location of the campground, the size of the RVs, and the effect of the planting plan was sufficient for the Board to determine that plaintiffs' attempts to mitigate the adverse impacts of the project were inadequate. In sum, there was sufficient evidence for the opposing party to carry his burden of showing that the project did not meet criterion 8.

## C.

The Board also found that plaintiffs failed to satisfy § 6086(a)(9)(K), which provides for the granting of permits to develop land adjacent to public lands when it is demonstrated that the development will not interfere with the public's use or enjoyment of or access to the public lands. The Board concluded that the White River qualifies as public lands and that the public's enjoyment of the river would be significantly diminished if the RV campground were allowed. In support of this conclusion, there was evidence that the segment of the river adjoining the project site is extensively used for various recreational pursuits, including fishing, canoeing, and swimming. Indeed, two public swimming areas are located near the project site. We find that there was sufficient evidence for the Board to reasonably conclude that plaintiffs had not met their burden regarding criterion 9(K).

In light of the foregoing discussion, we need not review the Board's determination that the project did not conform with the regional plan, as required by criterion 10.

*Affirmed.*