**In re Petition of Tom HALNON**

[811 A.2d 161]

No. 01-199

August 20, 2002. Petitioner Tom Halnon appeals the Vermont Public Service Board's denial of his application requesting a certificate of public good (CPG) for a wind turbine net metering system pursuant to 30 V.S.A. § 219a. Halnon claims the Board abused its discretion by relying exclusively on observations made during its site visit, instead of evidence contained in the record, and that the Board's decision was contrary to the legislative intent and purpose underlying 30 V.S.A. § 219a. We find no abuse of discretion and therefore affirm the Board's order.

Halnon and his wife own sixty-two acres of land on North Branch Road in East Middlebury upon which Halnon seeks to erect and use a wind turbine. As a facility for electricity generation that employs a renewable energy source, a wind turbine constitutes a "net metering system," 30 V.S.A. § 219a(3)(E), requiring a CPG issued by the Board. See 30 V.S.A. § 248(a)(2). In accordance with CPG application requirements, Halnon sent notice to neighboring landowners, and other interested parties, informing them of his application. Various objections were made to Halnon's CPG application, the bulk of which focused on the project's perceived negative aesthetic impact.

Mr. and Mrs. Rimonneau are neighboring landowners and part-time residents of a parcel of land across North Branch Road from the Halnon property who are among those opposed to Halnon's application for aesthetic reasons. Their residence is located at a slightly higher elevation from the proposed project site and looks down into the portion of the four acre meadow where Halnon proposes to site the wind turbine. The proposed turbine has three 23-foot diameter blades installed on a 100-foot tall tubular tower approximately one foot in diameter; it will be directly in view of the Green Mountains from the Rimonneaus' residence. Approximately 450 feet separates the Rimonneau residence and the proposed turbine site. The area is predominantly wooded, comprised of mature poplar trees 30-75 feet in height. There are a small number of one- and two-story homes and hunting camps hidden in the woods but no other man-made structures in the area.

Hearings were held on Halnon's CPG application during which the Rimonneaus, among other parties, were

granted intervention pursuant to Board Rule 2.209. Halnon did not raise an objection to the intervention of any of these parties. The bulk of the hearings focused on the issue of aesthetics, and proper application of the *"Quechee* test" utilized by the Board when reviewing issues of aesthetics under 30 V.S.A. § 248. The hearing officer held two site visits and several technical hearings and evaluated the proposed project under certain criteria detailed in 30 V.S.A. § 248. Applying the *Quechee* test the hearing officer's proposal for decision (PFD) determined that Halnon's CPG request should be denied "because the net metering system as proposed, would have an undue adverse effect on the aesthetics and scenic and natural beauty of the area in which it is proposed" in violation of 30 V.S.A. § 248(b)(5). The hearing officer found that there were alternative suitable sites for the proposed project and that Halnon had not availed himself of obvious and potentially effective mitigation steps which would lessen the aesthetic impacts of the project. Further, the hearing officer found the project would be offensive and shocking to the Rimonneaus and the average person in a similar situation. The PFD also invited the Board to reconsider this recommendation if Halnon could provide evidence that he has taken significant steps to minimize the negative effects that the project has on the Rimonneaus' direct view.

Fundamentally at issue in this case was whether Halnon's proposed project survived scrutiny under the *Quechee* test. The parties in this matter offer differing interpretations regarding proper application of the *Quechee* test, alternately referring to both a two-part, and a three-part *Quechee* analysis. For purposes of clarification we restate the proper *Quechee* test for determining whether a project will have an undue adverse effect on the aesthetics or scenic and natural beauty of an area.

The two-part *Quechee* test was first outlined by the Environmental Board in a previous case and has since been followed by this Court. See *In re McShinsky*, 153 Vt. 586, 591, 572 A.2d 916, 919 (1990). Under this test a determination must first be made as to whether a project will have an adverse impact on aesthetics and the scenic and natural beauty of an area because it would not be in harmony with its surroundings. *Id.* at 591, 572 A.2d at 919. If the answer is in the affirmative the inquiry then advances to the second prong to determine if the adverse impact would be "undue." *Id.* Under the second prong an adverse impact is undue if any one of three questions is answered in the affirmative: 1) Does the project violate a clear, written community standard intended to preserve the aesthetics or scenic, natural beauty of the area? 2) Does the project offend the sensibilities of the average person? 3) Have the applicants failed to take generally available mitigating steps that a reasonable person would take to improve the harmony of the proposed project with its surroundings? *Id.* at 592, 572 A.2d at 920. An affirmative answer to any one of the three inquiries under the second prong of the *Quechee* test means the project would have an undue adverse impact. *Id.* at 593, 572 A.2d at 920 .

The Board received comments on the hearing officer's PFD from all parties and intervenors, including the Rimonneaus, Halnon and the Department of Public Service. A duly noticed site visit, followed by oral argument, was held before the Board. Applying the second prong of the *Quechee* test analysis, the Board concluded Halnon has failed to present "any compelling reason why [he] could not use an alternative site," "has failed to take generally available mitigating steps which a reasonable person would take to improve the harmony of the proposed turbine with its surroundings," and further, that he had the "burden of proof in this case and has failed to

demonstrate this mitigation would be unreasonable." Based on this conclusion and the conclusion that the turbine would offend the sensibilities of the average person faced with a situation similar to the Rimonneaus', the Board accepted the hearing officer's conclusion that the project failed the two-part *Quechee* test and would, therefore, have an undue adverse effect upon the aesthetic and scenic and natural beauty of the area.

Appellant argues on appeal that in reaching its decision the Board erred by improperly relying on information obtained through its site visit. Specifically, appellant cites portions of the Board's decision which reference the site visit, unsupported by any citation to the record:

> The Applicant has not fully addressed the feasibility of other possible alternative locations which we observed at the site visit.

> From our site visit, it is apparent that there are some locations that could achieve approximately the same turbine height above surrounding terrain and vegetation with the same tower height as the proposed site.

> Based upon our site visit to the area, we concur with the Hearing Officer's conclusion that the project in its presently proposed location will offend the sensibilities of the average person faced with a similar situation.

Appellant argues that these references demonstrate improper reliance on site visits as the exclusive basis for the Board's findings, in contravention of our case law mandating otherwise. See *In re Quechee Lakes Corp.*, 154 Vt. 543, 551, 580 A.2d 957, 962 (1990). Specifically, appellant claims that the Board's reliance on its own site visit observation improperly formed the basis for its finding that the project failed to pass muster under the second prong of the *Quechee* test regarding mitigation and whether the project offends the sensibilities of the average person in the Rimonneaus' position.

Whether administrative fact-finders may base their findings on site visit observations was first addressed by this Court in *Quechee Lakes.* In that case, we recognized that administrative tribunals can base their decisions on a broader range of evidence than courts and so extended our previous holding that "judicial findings can be grounded on knowledge acquired from site visits, as long as such examinations are not the exclusive basis for the findings," to administrative tribunals. *Id.* at 551, 580 A.2d at 962. We concluded in *Quechee Lakes* that the Environmental Board's partial reliance on knowledge garnered from site visits was not erroneous. *Id.* at 552, 580 A.2d at 962. To the extent the fact-finder does intend to rely on site visit observations, we further held that those observations must be placed on the record in order to preserve the right of rebuttal and to facilitate review. *Id.*; 3 V.S.A. § 809(e)(2) (Vermont's Administrative Procedure Act provides that "[t]he record in a contested case shall include . . . all evidence received or considered"). We have previously recognized that where a party feels it has any "meaningful rebuttal" to site visit observations not in the record, on which the fact-finder intends to rely, the party must raise that argument before the board in a post-decision motion or it is deemed waived. *Quechee Lakes*, 154 Vt. at 552, 680 A.2d at 962 (internal citations omitted). Appellant failed to raise this issue in a post-decision motion. Even if appellant's claim was properly before the Court, it would not warrant our reversal of the Board's decision in this case.

We disagree with appellant that the Board relied exclusively on its own site visit as the basis for its conclusions. Rather, it is reasonable to conclude that the Board used its site visit observations merely to verify and affirm the hearing officer's conclusions. There is no evidence that the Board relied on its own site visit observations over and above, or to the exclusion of, other evidence before it. The Board's site visit observations constitute only a part of its total findings regarding the proposed project. There were more than 60 other findings made in support of the Board's final conclusion. Besides the site visit, the Board also heard testimony regarding the nature and scale of the turbine and the surrounding area and the project. This Court applies a deferential standard of review where the sufficiency of the evidence is challenged on review. *Quechee Lakes*, 154 Vt. at 554, 580 A.2d at 963. Evidence is substantial if it is relevant and a reasonable person might accept it as adequate to support a conclusion. *Id.* There exists ample evidence in the record, in addition to the Board's findings gleaned from its site visit, to support the Board's ultimate conclusion.

Halnon further argues that the Board's denial of his application is contrary to the intent of 30 V.S.A. § 219a. Specifically, he cites legislative findings to demonstrate that with net metering, the Legislature intended to encourage investment in renewable energy resources, enhance diversification of Vermont's energy resources, and stimulate economic growth. 1997, No. 136 (Adj. Sess.), § 1. Appellant also finds further support for the above legislative intent in the net metering statute's mandate to the Board to "simplify the application and review process as appropriate." 30 V.S.A. § 219a(c)(3). Halnon claims that putting the burden of proof upon him to show that mitigation would be unreasonable, and denying his application for failure to meet that burden, constitutes an abuse of discretion in the context of a net meter-

ing application, and contravenes the intent of § 219a.

Again we find appellant's argument unpersuasive. The Board denied Halnon's application after carefully balancing all appropriate policy considerations and then succinctly detailing its reasons for denying the application. The Board's decision-making process was neither careless, nor formed with any obvious disregard for the legislative intent and purpose of net metering. In denying Halnon's CPG application, the Board is not contradicting the Legislature's intent to facilitate the use of wind turbines as an alternative energy source. Abuse of discretion occurs when that discretion is exercised on grounds or for reasons clearly untenable, or to an extent clearly unreasonable. *In re Lunde Construction Co.*, 139 Vt. 376, 379, 428 A.2d 1140, 1141 (1981). It was not an abuse of discretion for the Board to dismiss Halnon's application when Halnon failed to provide evidence that he had taken significant steps to minimize the negative effects that the project would have on the Rimonneaus' view — even after the hearing officer invited him to do so, and also failed to present specific evidence supporting his contentions that siting the turbine at alternative locations caused problems and increased costs associated with the project. Several alternative sites for the project that would effectively shield the project behind large pine trees, and thus, effectively screen the project from the Rimonneaus' view, and from visibility along North Branch Road, were identified by Halnon in discussions with the Rimonneaus or identified during site visits and subsequent testimony. Halnon, however, conducted no analysis of alternative sites, objecting to them on the basis that he would have to cut down trees near his house, that there would be increased costs of installation at the alternative sites, and that relocation would still leave the project visible to two houses, one a quarter mile away, the

other two miles away. That implementing some of these mitigation measures would increase projects costs, cause power losses and may affect aesthetics on appellant's own property does not render the Board's conclusion that the turbine could be sited elsewhere an abuse of discretion.

Appellant also claims that the Board's abuse of discretion is further evidenced when its order in this case is contrasted with its order in *In re Blittersdorf*, CPG NM-11 (May 26, 2000). In that case the Board approved a CPG for a wind turbine in a neighborhood containing single family residences and inactive farms where the net metering system was "very visible from surrounding property and roads, with clear views of the turbine ranging from a few hundred feet in some directions up to one mile or more in other directions." *Id.* at 4-5. Appellant claims the Board's decision in the instant case is inconsistent with its decision in *Blittersdorf* and thereby thwarts the purpose of vesting statewide authority with the Board in order to effectuate uniform and fair statewide administration of public utility and electricity matters. Because of this, appellant claims the Board's decision was an abuse of discretion. We disagree. As the Board observed, the proposed wind turbine in *Blittersdorf* was not out of character with its less rural surroundings which included: residences, barns, silos, farm machinery, tall telephone poles and other large working structures. In addition, the neighbor opposing the *Blittersdorf* turbine was situated approximately 1300 feet from the turbine and possessed a panoramic view of the Adirondacks which would only be marginally affected by the wind turbine. By contrast, in the instant case, the area is predominantly rural and wooded, devoid of other large structures in the vicinity of the project and the Rimonneaus' home is situated only 450 feet from the proposed site. Their already limited view will be more severely affected by the presence of a turbine lo-

cated directly in front of them. Given that the proposal in *Blittersdorf* and in the instant case were for wind turbines sited in significantly dissimilar environments, it was not abuse of discretion for the Board to find Halnon's proposed turbine offensive or shocking to the average person.

There is a strong presumption that orders issued by the Public Service Board are valid. *In re E. Georgia Cogeneration Ltd. P'ship*, 158 Vt. 525, 531, 614 A.2d 799, 803 (1992). In reviewing orders of the Board, this Court gives great deference to the particular expertise and informed judgment of the Board. *Id.* Operating under that standard, we are unpersuaded that the Board's order in this case warrants reversal.

*Affirmed.*