STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: Appeal of JAM Golf, LLC | } | Docket No. 69-3-02 Vtec |
| | } | |
| | } | |

Decision and Order on Remaining Criteria under Void for Vagueness Analysis

Appellant JAM Golf, LLC appealed from a decision of the Development Review Board (DRB) of the City of South Burlington regarding a proposed ten-lot subdivision. Appellants are now represented by William A. Fead, Esq.; the City of South Burlington is represented by Amanda Lafferty, Esq.; Interested Persons James Marc Leas, Marie Ambusk, William Rozich, Elizabeth Rozich, John Kane, Michael Provost, and Heather Provost have appeared and represent themselves.

Procedural History

This Court issued a Decision and Order in June 2006 on the merits of this matter, denying the application on the basis that the proposed project does not meet the requirements of two of the criteria for a Planned Residential Development (PRD). See South Burlington Zoning Regulations, § 26.151.[1]  On appeal, the Vermont Supreme Court reversed the denial, holding that both of the criteria addressed in the 2006 Environmental Court decision were unenforceable, and remanded for this Court to issue a decision under the remaining sections of the zoning regulations at issue in this appeal.  In re Appeal of JAM Golf, LLC, 2008 VT 110.

The Supreme Court held that § 26.151(g), which requires PRDs to "protect

---

[1] All citations to section numbers refer to sections of the South Burlington Zoning Regulations, as last amended April 23, 2002, unless otherwise specifically noted.

1

important natural resources including . . . scenic views, wildlife habitats, and special features such as mature maple groves . . . ," violated the due process rights of property owners because it "provides no guidance as to what may be fairly expected from landowners" and allowed the body reviewing the application to exercise "standardless discretion." Id. at ¶ 14 (citing In re Miserocchi, 170 Vt. 320, 325 (2000)).

The Supreme Court upheld § 26.151(l), which requires PRDs to conform to the City's Comprehensive Plan, on the basis that a zoning bylaw requiring conformance with a municipal plan can be an appropriate method of zoning regulation, as long as the referenced plan "contain[s] 'specific standards' to guide enforcement." Id. at ¶¶ 16–17 (quoting In re John A. Russell Corp., 2003 VT 93, ¶ 16, 176 Vt. 520 (mem.)). However, it also held that the application could not be denied in this case on the basis of the protection of natural resources under that section, because the corresponding Plan sections were "too ambiguous to be enforceable." Id. at ¶ 19. The Supreme Court therefore remanded the application for this Court to address the proposed project's compliance with the other subsections of § 26.151 that remained at issue in this appeal.

Remaining Criteria

The parties have stipulated that only subsections (h) and (i) of § 26.151 remain at issue in this appeal. Subsection (h) requires that the proposed project "[w]ill not have an undue adverse effect on the scenic or natural beauty of the area, [and] is aesthetically compatible with surrounding developed properties . . . ." Subsection (i) requires that the proposed project "[w]ill provide convenient allocation and distribution of common open space in relation to proposed development and will conform with the City's recreation plan." Applicant argues that both of these subsections are vague and standardless, and cannot support a denial of the application, for the same reasons as discussed by the Supreme Court regarding subsection (g).

"Void for Vagueness" Standard

In analyzing subsection (g) of § 26.151, the Supreme Court expressed the concern that the lack of "'sufficient conditions and safeguards'" in the form of "'adequate guidance'" as to how the subsection should be applied could lead to "'unbridled discrimination' by the court and the planning board charged with its interpretation." JAM Golf, 2008 VT 110, ¶ 13 (quoting Town of Westford v. Kilburn, 131 Vt. 120, 122, 125 (1973)). The grant of unlimited discretion to the reviewing body, coupled with the lack of notice in the regulations advising landowners as to what will be required of a PRD applicant, violates potential applicants' due process rights. Id. at ¶ 14.

Zoning ordinances are entitled to a presumption of validity, and courts will decline to interfere with an ordinance unless it "'clearly and beyond dispute is unreasonable, irrational, arbitrary or discriminatory.'" In re Letourneau, 168 Vt. 539, 544 (1998) (quoting City of Rutland v. Keiffer, 124 Vt. 357, 367 (1964)). As the Vermont Supreme Court noted in Town of Westford v. Kilburn:

> Just how far a zoning ordinance must go in setting forth guiding standards for decisions of [municipal panels] is one where there is little unanimity in the cases. On one hand the standards governing the delegation of such authority should be general enough to avoid inflexible results, yet on the other hand they should not leave the door open to unbridled discrimination.

131 Vt. 120, 124–25 (1973) (citations omitted). Although excessive discretion is a concern, a reviewing court "will uphold standards even if they are general and will look to the entire ordinance, not just the challenged subsection, to determine the standard to be applied." In re Pierce Subdivision Application, 2008 VT 100, ¶ 20 (citing Kilburn, 131 Vt. at 125).

Zoning ordinances are interpreted using the same principles and rules of construction as statutes. In re Jenness and Berrie, 2008 VT 117, ¶ 11 (citing In re Vt. Nat'l Bank, 157 Vt. 306, 312 (1991)). In interpreting statutes and ordinances, courts

3

presume that the drafters were "mindful of relevant precedents and prior legislation." Heffernan v. Harbeson, 2004 VT 98, ¶ 9, 177 Vt. 239 (citing Thayer v. Herdt, 155 Vt. 448, 453 (1990)). The court may look to "historical usage" to derive the meaning of a phrase challenged for vagueness.[2] In re Handy, 171 Vt. 336, 348–49 (2000) (citing Kent v. Dulles, 357 U.S. 116, 127–28 (1958)).

Subsection (i)

Subsection (i) of § 26.151 requires the Court to determine whether the proposed project "[w]ill provide convenient allocation and distribution of common open space in relation to proposed development," as well as whether the proposed project "will conform with the City's recreation plan.[3]"

As it is worded, § 26.151(i) lacks standards to direct and limit the reviewing body's discretion. The language of § 26.151(i) provides no guidance as to what allocation and distribution of common open space in a PRD would be "convenient," much as subsection (g) provided no guidance as to "what would constitute a failure to

---

[2] Looking to external sources to interpret and clarify a provision challenged for vagueness is consistent with the approach taken by other jurisdictions. See, e.g., Campion v. Board of Aldermen, 899 A.2d 542, 558 (Conn. 2006) ("References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning."); Ross v. City of Rolling Hills Estates, 238 Cal. Rptr. 561, 563 (Cal. Ct. App. 1987) ("[W]ords of long usage, or which have an established or ascertainable meaning in the profession or industry involved, or those which have been given a definite and restrictive interpretation by the courts, or the meaning of which may be determined from a fund of human knowledge and experience, will meet the test of certainty."); Fogelman v. Town of Chatham, 446 N.E.2d 1112, 1114–15 (Mass. App. Ct. 1983) (looking to a statute which contained "respected antecedents" that "may justifiably be used to supply explicit standards for applying" the challenged bylaw).

[3] The parties do not dispute that the clause of § 26.151(i) requiring conformance with the City's recreation plan is inapplicable to the present appeal, as the City's recreation plan does not address the property at issue in this appeal.

'protect' the listed resources." JAM Golf, 2008 VT 110, ¶ 13 (quoting § 26.151(g)). The Court cannot determine how to interpret the term "convenient," as the language of § 26.151(i) contains no standards to guide its application. See id. at ¶ 14. The Court cannot analyze how close the common open space needs to be to particular PRD dwellings to meet the standard of "convenient . . . distribution," nor how much open space per unit meets the standard of "convenient allocation." As such, the application of subsection (i) could lead to the "unbridled discrimination" with which the Supreme Court was concerned. See id. at ¶ 13. Subsection (i) also fails to notify potential applicants of what will be required of them in designing a PRD. See id. at ¶14.

Therefore, unless the meaning of "convenient allocation and distribution of common open space" can be derived from other provisions of the zoning ordinance or external sources, § 26.151(i) is unenforceable due to its vagueness and lack of standards.

Looking first to the zoning ordinance, beyond the text of § 26.151(i), only one provision applicable to the proposed project discusses open space requirements.[4] All PRDs are required to conform with § 26.153, which deals with the mechanisms for ensuring that open space associated with a PRD is legally protected. Although the first sentence of § 26.153 mentions location, size, and shape of open space, the only requirement is that these aspects be approved by the DRB. Section 26.153 provides no additional guidance as to the meaning of "convenient allocation and distribution" of common open space than that provided in § 26.151(i), nor does it provide any standards that could be used to guide the reviewing body's discretion in applying § 26.151(i).

---

[4] Although § 6.606 also addresses open space requirements for PRDs in the Southeast Quadrant zoning district, that section only applies to "proposed development activity or the location of residential development lots in a restricted area" (emphasis added). "Restricted areas" are designated on the "Southeast Quadrant Official Zoning Map" according to § 6.301. Because the present application proposes no development or lots in a restricted area, § 6.606 is inapplicable to this appeal. In any event, § 6.606 deals with the location of open space, not its allocation and distribution.

Looking to sources beyond the 2002 Zoning Regulations, two applicable provisions of the South Burlington Subdivision Regulations discuss open space requirements; however, neither provides any guidance in interpreting or applying § 26.151(i). Section 411 deals with the amount of open space, as opposed to the allocation and distribution of open space. Section 412.1 requires preservation of certain existing features on proposed project sites, including woodlands, "which the Commission feels are an asset to the site and/or community . . . insofar as possible through harmonious design and appropriate construction methods." This provision does not address the allocation or distribution of common open space, but rather the preservation of important features, which may or may not constitute open space. Furthermore, the phrase "which the Commission feels are an asset to the site and/or community" also provides no standards to guide the discretion of the Court or the municipal panel in applying § 26.151(i).

The Court has not been made aware of any other external sources that could provide guidance as to the meaning or application of § 26.151(i). The parties have not identified any statute, in Vermont or elsewhere, in which the phrase "convenient allocation and distribution" is defined or even used, nor have the parties identified any judicial or administrative interpretation of the phrase.

Because the phrase "convenient allocation and distribution of common open space" is standardless and vague, that portion of § 26.151(i) cannot be enforced as to the application at issue in the present appeal.

Subsection (h)

As applicable to this appeal,[5] subsection (h) of § 26.151 requires two separate

_____

[5] The parties do not dispute that there are no rare and irreplaceable natural areas or historic sites on the property that require protection, making the third clause of § 26.151(h) inapplicable to the present appeal.

determinations: that there will be no undue adverse effect on the scenic or natural beauty of the area due to the proposed project, and that the proposed development will be aesthetically compatible with the neighborhood.

The phrase "undue adverse effect on the scenic or natural beauty of the area" is found verbatim in Act 250, 10 V.S.A. § 6086(a)(8), and has been interpreted by the former Environmental Board and in case law prior to the adoption of the 2002 South Burlington Land Development Code applicable to this appeal. Therefore, this phrase can be interpreted according to its "historical usage" in Act 250, a law which has generated enough litigation to provide a judicial interpretation of the phrase "undue adverse effect," as well as a recognized methodology for the analysis of a project's effect on aesthetics. See In re Handy, 171 Vt. at 348–49.

In the context of Act 250, the former Environmental Board developed[6] the so-called Quechee test, which is a two-part analysis to determine if a proposed project has an "undue adverse effect on the scenic or natural beauty of the area." The first determination is whether the proposed project will have any adverse effect, made by analyzing whether it will be "in harmony with its surroundings." This test is similar to the inquiry required by the second clause of § 26.151(h), regarding the project's aesthetic compatibility with its neighborhood. This determination is based on the following factors:

1) What is the nature of the project's surroundings? Is the project to be located in an urban, suburban, village, rural or recreational resort area? What land uses presently exist? What is the topography like?

---

[6] The Environmental Board developed this test based on the testimony of architects and landscape designers who had experience in evaluating the aesthetic impacts of proposed developments, noting: "We were struck by the commonality of understanding by professionals in this field concerning the considerations one applies in evaluating the aesthetic impacts of new developments." In re Quechee Lakes Corp., Permit Nos. 3W0411-EB & 3W0439-EB, Findings of Fact, Concl. of Law & Order, at 17–18 (Vt. Envtl. Bd. Nov. 4, 1985).

What structures exist in the area? What vegetation is prevalent? Does the area have particular scenic values?

2) Is the project's design compatible with its surroundings? Is the architectural style of the buildings compatible with other buildings in the area? Is the scale of the project appropriate to its surroundings? Is the mass of structures proposed for the site consistent with land use and density patterns in the vicinity?

3) Are the colors and materials selected for the project suitable for the context within which the project will be located?

4) Where can the project be seen from? Will the project be in the viewer's foreground, middleground or background? Is the viewer likely to be stationary so that the view is of long duration, or will the viewer be moving quickly by the site so that the length of view is short?

5) What is the project's impact on open space in the area? Will it maintain existing open areas, or will it contribute to a loss of open space?

In re Quechee Lakes Corp., Permit Nos. 3W0411-EB & 3W0439-EB, Findings of Fact, Concl. of Law & Order, at 18 (Vt. Envtl. Bd. Nov. 4, 1985).

If a proposed project will have an adverse effect, the second step in the inquiry is to determine whether the adverse effect is "undue," by analyzing the following three questions:

1) Does the project violate a clear, written community standard intended to preserve the aesthetics or scenic, natural beauty of the area? Such standards may, for example, be set forth in the local or regional plan . . . .

2) Does the project offend the sensibilities of the average person? . . . It is not enough that we might prefer to see a different design or style of building, or that we might prefer a different type of land use, but that the project, when viewed as a whole, is offensive or shocking, because it is out of character with its surroundings, or significantly diminishes the scenic qualities of the area.

8

3) Has the Applicant failed to take generally available mitigating steps which a reasonable person would take to improve the harmony of the proposed project with its surroundings? . . .

In re Quechee Lakes Corp., Permit Nos. 3W0411-EB & 3W0439-EB, Findings of Fact, Concl. of Law & Order, at 19–20 (Vt. Envtl. Bd. Nov. 4, 1985). If any of the three questions above are answered affirmatively, the effect is considered "undue."

This two-part "Quechee test" has been upheld as used in Act 250 cases as recently as 2008. In re Times & Seasons, LLC, 2008 VT 7, ¶¶ 8–10, 183 Vt. 336; see In re Halnon, 174 Vt. 514, 515 (2002) (mem.); In re McShinsky, 153 Vt. 586, 591–92 (1990).

The Quechee test provides standards which can be used to guide the analysis of whether a proposed project has an "undue adverse effect on the scenic or natural beauty of the area." It also incorporates the inquiry required by the second clause of § 26.151(i), whether the proposed project "is aesthetically compatible with surrounding developed properties," as this analysis is subsumed by the first step of the Quechee test. Although these standards were developed in the context of Act 250, using these standards in applying the identical language in § 26.151(i) is appropriate because the Quechee test provides the "historical usage" from which the meaning of the phrase challenged for vagueness can be derived. See In re Handy, 171 Vt. at 348–49; cf. In re Hildebrand, 2007 VT 5, ¶ 13, 181 Vt. 568 (mem.) (holding that "the Environmental Court reasonably used the Act 250 standards" in a zoning case).

The Court presumes the drafters of the 2002 Zoning Regulations were mindful of the use of the identical phrase in Act 250 and the precedent involving its application. See Heffernan v. Harbeson, 2004 VT 98, ¶ 9. The Quechee test also addresses the concerns expressed in JAM Golf, 2008 VT 110, ¶¶ 13–14, as it contains standards appropriate to guide the reviewing body's discretion, so as to protect against unbridled discrimination, and puts applicants on notice about what is required from them.

9

Because § 26.151(h) uses identical language to the corresponding criterion in Act 250, and the <u>Quechee</u> test provides standards which can be applied to determine whether a proposed project will have an "undue adverse effect on the scenic or natural beauty of the area" and whether it is "aesthetically compatible with surrounding developed properties," § 26.151(h) is not too vague to be enforceable.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that § 26.151(i) is unenforceable and will therefore not be further considered with respect to the merits of the application before the Court in this appeal. The Court will proceed to rule on the application under 26.151(h), applying the <u>Quechee</u> methodology discussed above.

Done at Berlin, Vermont, this 12th day of June, 2009.

_____
                Merideth Wright
                Environmental Judge