*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

<u>ENTRY ORDER</u>

SUPREME COURT DOCKET NO. 2011-204

APRIL TERM, 2012

In re Verizon Wireless Barton          }      APPEALED FROM:
Act 250 Permit                         }
                                       }      Superior Court,
                                       }      Environmental Division
                                       }
                                       }
                                       }      DOCKET NO. 6-1-09 Vtec

                                              Trial Judge: Thomas S. Durkin

In the above-entitled cause, the Clerk will enter:

Neighbor Michael Auger appeals from a decision of the Superior Court, Environmental Division, that approved an Act 250 application submitted by Verizon[*] to construct a wireless telecommunications tower and related infrastructure on adjacent land. On appeal, neighbor argues that the court erred in concluding that the project will not have an adverse aesthetic impact. We affirm.

In February 2008, Verizon applied to the appropriate District Commission for an Act 250 permit to erect a wireless telecommunications tower in Barton. Verizon proposed to erect a 107-foot free-standing monopole tower to be disguised as a pine tree, along with an accompanying equipment shelter. The plan envisions that the tower will be disguised with artificial branches and the monopole painted brown to resemble a tree trunk. The monopole will be located within a 100-foot by 100-foot area about 220 feet from neighbor's property line. The site is about 3300 feet from neighbor's farmhouse and 4800 feet from the westerly edge of Interstate 91. The project includes an equipment shed at the base of the tower surrounded by a chain-link fence. Electric service for the tower will come from an installed electrical line with a gas-powered electric generator as backup. The area around the site is heavily wooded with an average tree height of fifty feet.

Following a site visit and a hearing, the District Commission found that the proposal met all applicable Act 250 criteria and granted a permit. Neighbor appealed this ruling to the Environmental Division. The sole issue before that court was whether Verizon's proposed tower violated criterion 8 of Act 250—that is, whether the proposal would "have an undue adverse effect on the scenic or natural beauty of the area, aesthetics, historic sites or rare and irreplaceable natural areas." 10 V.S.A. § 6086(a)(8). The court conducted a site visit and a de novo hearing.

---

[*] Applicant's full name is Vermont RSA Ltd. Partnership and Cellco Partnership, d/b/a Verizon Wireless; for simplicity, we refer to applicant as "Verizon."

Based on the evidence, the court found the following facts. Neighbor's property is located on the easterly slope of a hillside that faces Interstate 91, a short distance from exit 25 and several commercial developments. Neighbor's property has a history of agricultural use, and has been previously used as a dairy farm, for maple syrup production, as an agricultural attraction catering to the general public through sales of agricultural products, and for outdoor activities like picnicking and hiking. At the time of trial, however, neighbors had suspended agricultural and business operations on the property. VELCO holds an easement across neighbor's land and maintains three parallel electric transmission lines that run south of the farmhouse. The proposed monopole will not be visible from neighbor's farmhouse, but could be seen from some areas on neighbor's land. The tower will be difficult to observe from the interstate.

The court began its analysis of the aesthetic impact of the project pursuant to the Quechee analysis, In re Quechee Lakes Corp., 154 Vt. 543, 546, 556-67 (1990), by first asking whether the proposed tower and support facilities would have "an adverse aesthetic impact." The court explained that the threshold question is whether the project is "unfavorable," "opposed," or "hostile" to its surroundings, and concluded that it was not. Acknowledging the scenic beauty of neighbor's property, the court noted that "any observer of the area surrounding the proposed Verizon project site, or the context in which the project would be located, must acknowledge that the area is no stranger to development." The court pointed to other commercial development nearby, and to the "highly visible" high-power electric transmission lines located on neighbor's property.

In addition, the court explained that the project, "with the exception of the top of the tower/tree structure, will be screened, shielded, and nearly impossible to view from all surrounding lands unless one walks with a determined eye to locate the project site and looks through the wooded area near the eastern boundary of the [site] property." The court was not convinced by neighbor's objections that the tower would adversely affect his business and property "if and when he succeeded in reinvigorating his commercial ventures," and concluded that neighbor's concerns appeared to have little factual foundation. The court concluded that the design and location of the tower ensured its "aesthetic symmetry" with its surroundings and that the proposal would not have an adverse aesthetic impact; it therefore did not reach the question of whether any adverse impact was "undue." Id. Accordingly, the court remanded the case to the District Environmental Commission for issuance of the Act 250 permit.

On appeal, neighbor challenges the court's conclusion that the project will not have an adverse aesthetic impact. The party opposing a project based on criterion 8 has the burden of demonstrating that the project will have an adverse impact. 10 V.S.A. § 6088(b). We have endorsed the two-pronged Quechee test for determining whether an Act 250 application complies with criterion 8. In re Rinkers, 2011 VT 78, ¶ 9. "[A] determination must first be made as to whether a project will have an adverse impact on aesthetics and the scenic and natural beauty of an area because it would not be in harmony with its surroundings." In re Halnon, 174 Vt. 514, 515 (2002) (mem.). If the factfinder concludes that the project will have an adverse impact, "the inquiry then advances to the second prong to determine if the adverse impact would be 'undue.'" Id.

Neighbor contends that he presented uncontested evidence that the proposed tower would have an adverse aesthetic impact and therefore the court's finding to the contrary was error. In support, neighbor states that testimony established that the proposed development area was used in the past for camping and may be used in the future for skiing. According to neighbor, the court failed to consider the aesthetic impact of the tower on these uses and solely considered the view from the highway and the farmhouse.

We apply a deferential standard of review to decisions of the Environmental Division. In re Rinkers, 2011 VT 78, ¶ 8. "We will overturn factual findings only where the party contesting them demonstrates that there is no credible evidence to support them, and not merely because they are contradicted by substantial evidence." Id. (quotation omitted). With respect specifically to findings under 10 V.S.A. § 6086(a)(8), we have observed that "[d]etermining the degree of adverse aesthetic effect is a matter of weighing of the evidence, a role for the [trial court] rather than for this Court." In re Denio, 158 Vt. 230, 239 (1992).

Here, the court's conclusion that the tower does not present an adverse aesthetic impact is supported by adequate findings, which are in turn supported by the evidence. The court explained that when examined against the backdrop of other development in the vicinity, including the transmission lines already located on neighbor's property, the tower would not be out of context in its surroundings. The court further emphasized that the tower was well screened and could be viewed only from limited places on neighbor's land. These findings are supported by credible evidence such as photos from various viewpoints depicting the site and a mock-up of the proposed tower, testimony from Verizon's project manager that there were already several utility poles in view from the project site, the project manager's testimony about sight lines to the tower top from various locations, and his description of the design of the monopole so that it blends in.

The court was not persuaded by neighbor's concern that the project would adversely impact aesthetics in connection with primitive hiking and camping activities on the portion of his land nearest the project site, or in the context of changes neighbor was considering to his property and its use. It is up to the Environmental Court to determine the credibility of witnesses and weigh the persuasive effect of evidence. In re Rinkers, 2011 VT 78, ¶ 8. The evidence regarding the actual extent of camping on neighbor's property near the project site was limited. Neighbor's town camping permit identified a camping area on the southern portion of his land, not on the western boundary near the project site. Neighbor testified that he had no paying campers in 2010, and acknowledged that even when hikers came, he did not know where the campers went. Neighbor recognized that people who camp near the proposed project site can see the existing high-power utility lines from their campsite. In addition, although neighbor described various plans for reviving the tourist-related business associated with his property, he acknowledged that the last time it actually functioned as a thriving business was in 2000. In light of this evidence, the trial court's findings, and its conclusion that the project would not have an adverse aesthetic impact, were supported by the record.

Neighbor also argues that the generator and HVAC system associated with the tower will create noise and that the court failed to consider this issue. Having reviewed the record, we conclude that the evidence regarding the noise created by the tower does not undermine the court's conclusion that the monopole and associated equipment will not have an adverse

3

aesthetic impact. Verizon's project manager testified about a noise level study and data from which he could estimate the noise level at neighbor's property line associated with the project. He explained that the noise level associated with the HVAC system, which runs primarily during the summer for cooling purposes, measured at the edge of neighbor's property, will be less than 40 DBA—more than the baseline 25 DBA associated with a quiet, rural setting at night, but still less than the 50 DBA associated with a quiet urban area in the daytime. In the rare and most extreme instances in which both the generator and the HVAC run—during a power-outage, for example—the noise level at the neighbor's property line will still fall under 50 DBA because obstructions shield much of the generator sound from neighbor's direction. Beyond the property line, the sound level will drop off farther from the sources of the sound. Neighbor did not present any contrary evidence. The unchallenged evidence demonstrates that any noise created would be at a relatively low level, during brief periods of time, and in a small area of neighbor's land that is not well used. Given these facts, neighbor has not demonstrated that the court erred in failing to conclude that noise levels create an adverse aesthetic impact.

Finally, neighbor contends that the court made errors that could taint its consideration of whether, pursuant to the second prong of the Quechee test— the adverse impact is undue. In particular, neighbor argues that the trial court erred in concluding that the Barton Zoning Board of Adjustment's conclusion that the proposed project complied with the town's zoning bylaw relating to co-location of telecommunication facilities was res judicata; neighbor argues that he did not receive timely notice of the ZBA proceeding and did not have an opportunity to fully litigate the matter below. In addition, neighbor argues that the trial court failed to consider the impact of noise associated with the project, so that its consideration of whether the project would "offend the sensibilities of the average person" was inadequate. And neighbor argues that the lower court should have allowed evidence regarding alternate sites not owned or controlled by Verizon in its consideration of potential mitigating steps.

Neighbor acknowledges that the lower court never reached the question of whether any adverse impact was undue, but raises these arguments in an effort to avoid repetition of the asserted errors on remand, presumably in the context of an application of the second prong of Quechee. Because we affirm the lower court's conclusion that the proposed project would not have an adverse aesthetic impact under the first prong of the Quechee analysis, and accordingly do not remand for further consideration, we need not address neighbor's arguments relating to the second prong of the Quechee analysis.

Affirmed.

4

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice