REIBER, C.J.
¶ 1. Petitioner SolarCity Corporation appeals the Public Utility Commission's decision that petitioner violated 30 V.S.A. § 248 and Commission Rule 5.101 by constructing rooftop solar-energy net-metering systems without first obtaining certificates of public good and its imposition of a civil penalty pursuant to 30 V.S.A. § 30.[1] We affirm.
I. Overview of Net-Metering Process
¶ 2. We begin with a brief overview of the net-metering process. With an exception not relevant here, Vermont law prohibits any corporation from constructing a new electric-generation facility without first obtaining a certificate of public good (CPG) from the Commission. 30 V.S.A. § 248(a)(2). The Commission determines whether to issue a CPG according to the extensive process set forth in § 248. As an alternative to the § 248 process, the Legislature has provided a simplified procedure for the approval of certain small net-metering systems, such as the solar arrays at issue here. Prior to January 1, 2017, that simplified process was codified at 30 V.S.A. § 219a (2016) (repealed by 2013, No. 99 *1258 (Adj. Sess.), § 2 (effective Jan. 1, 2017)).[2] Since January 1, 2017, the net-metering process has been codified at 30 V.S.A. § 8010. 2013, No. 99 (Adj. Sess.), § 10(d). The Commission promulgated regulations pursuant to both statutes, as directed by the Legislature. See 30 V.S.A. § 219a(c) (2016)[3] ; 30 V.S.A. § 8010(c) ; Regulations Pertaining to Construction and Operation of Net Metering Systems, Rule 5.100 [hereinafter Prior Rule 5.100], https://puc.vermont.gov/sites/psbnew/files/doc_library/5100-PUC-nm-adopted-2013_0.pdf [https://perma.cc/27MM-96WH] (implementing § 219a ); Regulations Pertaining to Construction and Operation of Net-Metering Systems, Rule 5.100, Code of Vt. Rules 30 000 5100 [hereinafter Current Rule 5.100], https://puc.vermont.gov/sites/psbnew/files/doc_library/5100-PUC-nm-effective-07-01-2017_0.pdf [https://perma.cc/AF5J-X2EC] (implementing § 8010 ).[4] According to this simplified procedure, someone intending to install an applicable net-metering system begins the approval process by submitting a registration form with the Commission, the interconnecting utility company, and the Department of Public Service (Department) prior to construction. 30 V.S.A. § 219a(c)(1) ; Prior Rule 5.100, § 5.110; Current Rule 5.100, § 5.105. If the utility does not raise any issues regarding interconnection within ten days, a CPG is then "deemed issued" for that system. The system may then be installed. 30 V.S.A. § 219a(c)(1) ; Prior Rule 5.100, § 5.110(A)(3); Current Rule 5.100, § 5.105(E).
II. Facts
¶ 3. Petitioner has been installing solar net-metering systems in Vermont since 2015. In June 2017, the Commission informed petitioner that it had failed to file registration forms with the Commission for some of the systems it had installed in 2016. Petitioner subsequently discovered additional systems for which it had failed to file registration forms with the Commission in 2015 and 2017. It had filed the registration forms with the interconnecting utilities and the Department. Petitioner attempted to cure its error by submitting 2016 registration forms for the omitted systems; however, for 134 systems, the Commission required registration under the 2017 form. Petitioner did not challenge the Commission's instruction to use 2017 forms to register the systems. Due to a substantial change in the net-metering program between 2016 and 2017, registering the omitted systems under the 2017 form rather than the 2016 form meant a potentially adverse financial impact for petitioner's customers. To mitigate that financial harm, petitioner modified its customer agreements and offered payment adjustments. Petitioner estimated that these efforts would cost the company around $ 200,000 and would protect its customers from any adverse financial impact.
*1259 ¶ 4. In September 2017, after petitioner had begun working to correct its error, the Department petitioned the Commission to open an investigation into petitioner's business practices. The Commission did so, pursuant to 30 V.S.A. §§ 30, 209, 247, 248, and 8010, and it appointed a hearing officer to review the matter.[5] During September and October 2017, the Department and petitioner engaged in discovery and in settlement negotiations. No other parties intervened in the action. The Department and petitioner filed a Statement of Stipulated Facts with the Commission in October 2017. Among other things, the stipulation stated that petitioner installed 134 systems without filing the appropriate registration forms with the Commission; a penalty was not appropriate; and petitioner did not admit to liability. The Department requested that the Commission approve the stipulation without further proceedings.
¶ 5. Before deciding whether to approve the stipulation, the hearing officer assigned to petitioner's case requested additional information and briefing. After reviewing these additional filings, the hearing officer recommended that the Commission find that petitioner violated 30 V.S.A. §§ 219a and 248 and § 5.101 of Current Rule 5.100, and recommended a $ 1000 civil penalty pursuant to 30 V.S.A. § 30. The Department and petitioner both filed comments objecting to the hearing officer's proposal for decision. Petitioner also filed a motion requesting the Commission to close the investigation. The Department did not oppose petitioner's motion and recommended that the Commission close the docket.
¶ 6. In May 2018, the hearing officer responded to the parties' comments and repeated his recommendations to the Commission, with some modifications. Without further proceedings, the Commission considered the proposal for decision, the objections to the proposal, and petitioner's motion to close the investigation. The Commission adopted the hearing officer's findings, conclusions, and recommendations, with some modifications. The Commission denied petitioner's motion to close the investigation. It found petitioner had violated 30 V.S.A. §§ 219a and 248 and § 5.101 of Current Rule 5.100, and it concluded that a penalty was warranted pursuant to 30 V.S.A. § 30. In recognition of petitioner's efforts to mitigate potential harm to its customers, the Commission set a "relatively small civil penalty" of $ 1000. Petitioner timely appealed.
¶ 7. Petitioner argues on appeal that: (1) the Commission erred in failing to close the investigation based on the joint stipulation and motion for dismissal; (2) its filing registrations were complete and the Commission erred in saying no filings were made; (3) there was insufficient evidence to support findings of violations or liability or the imposition of a civil penalty; (4) the Commission abused its discretion in failing to treat like cases alike; (5) the Commission failed its mandatory duty to permit petitioner to file the registrations; (6) the Commission abused its discretion in failing to waive a strict application of its rules for good cause; and (7) the Commission erred by ignoring petitioner's intent.[6] We consider each argument in turn.
*1260 III. Stipulation
¶ 8. Petitioner contends that pursuant to Vermont Rule of Civil Procedure 41(a)(1)(ii) and 3 V.S.A. § 809(d), the stipulation and motion to close the investigation effectively concluded the proceedings; therefore, the Commission acted outside its authority in finding a violation and imposing a penalty after the stipulation was filed.[7]
¶ 9. We review with deference the Commission's decisions and its "interpretation of statutes it implements and its rules." In re GMPSolar-Richmond, LLC, 2017 VT 108, ¶ 19, 206 Vt. 220, 179 A.3d 1232 ; In re Citizens Utils. Co., 171 Vt. 447, 450, 769 A.2d 19, 23 (2000) ("As long as the [Commission's] decisions are directed at proper regulatory objectives, they enjoy a strong presumption of validity and are subject to great deference in this Court." (quotation omitted)). At the same time, "we do not abdicate our responsibility to examine a disputed statute independently and ultimately determine its meaning." In re Stowe Cady Hill Solar, LLC, 2018 VT 3, ¶ 20, 206 Vt. 430, 182 A.3d 53 (quotation omitted). We do not defer to the Commission in its interpretation of the Vermont Rules of Civil Procedure, which are neither the Commission's rules nor a statute it implements.
¶ 10. Petitioner's argument essentially asserts that the Commission is only an adjudicative body and that it has no power independently to evaluate the matters within its jurisdiction. This is incorrect. To explain, we begin with background information about the Commission's powers.
A. Commission's Powers
¶ 11. The Legislature has granted the Commission oversight of electricity companies and electric-generation facilities, and the Commission shares this responsibility with the Department. See, e.g., 30 V.S.A. § 203 ("The Public Utility Commission and the Department of Public Service shall have jurisdiction over the following described companies within the State, ... and of all plants, lines, exchanges, and equipment of ... [a] company engaged in the manufacture, transmission, distribution, or sale of gas or electricity ...."). The Commission and the Department are wholly separate bodies. See id. §§ 1, 3. Some powers of oversight belong only to the Department, and others belong only to the Commission. See, e.g., id. § 2(a)(5) (authorizing Department to act as state's representative in purchasing electricity from out-of-state producers); id. § 9 (granting Commission authority to act as court of record in proceedings under its jurisdiction). Other powers the Commission and the Department share. See, e.g., id. § 18 (authorizing Commission and Department to "examine the books, accounts, and papers of any company ... operating any line, plant, or property, subject to the Commission's or the Department's jurisdiction").
¶ 12. With regard to investigations, in various sections throughout Title 30 the Legislature has authorized the Department *1261 to petition the Commission to open an investigation, and it has also authorized the Commission to open investigations on its own initiative. See, e.g., ibr.US_Case_Law.Schema.Case_Body:v1">id. § 218(a) (authorizing Commission to open investigation and make findings and judgment regarding rates, tolls, charges, or schedules); ibr.US_Case_Law.Schema.Case_Body:v1">id. § 227a(c) (authorizing Commission to investigate whether to reimpose regulatory requirements for telecommunications services, either upon Department's petition or upon its own initiative); id. § 4002a(b)(1) (authorizing Commission to investigate certain contracts if Department opposes contract or upon Commission's own motion).
¶ 13. The Legislature has invested the Commission with "the powers of a court of record," ibr.US_Case_Law.Schema.Case_Body:v1">id. § 9, but the Commission "is not a court in the strict sense." Trybulski v. Bellows Falls Hydro-Elec. Corp., 112 Vt. 1, 8, 20 A.2d 117, 120 (1941). Rather, the Commission is an administrative agency that possesses quasi-judicial powers. See id. at 7-8, 20 A.2d at 120 (describing Commission as "an administrative body, clothed in some respects with quasi judicial functions" and holding that Commission's jurisdiction is "of a supervisory nature, to be exercised in the interest and for the welfare of the general public"); see also Vt. Elec. Power Co. v. Bandel, 135 Vt. 141, 146, 375 A.2d 975, 979 (1977) (recognizing that "the combination of administrative and adjudicative responsibilities of the [Commission] does demand an exacting balance" (quotation omitted)). In its quasi-judicial role, the Commission oversees many different types of proceedings, such as: consumer complaints regarding utility services, see, e.g., Kettle Brook Condo. Owners' Ass'n, Nos. 7552, 7568, 2013 WL 6442690 (Vt. Pub. Serv. Bd. Dec. 4, 2013) (addressing consumer complaints alleging unauthorized sale of water services); petitions for condemnation of private property, see, e.g., Vt. Elec. Coop., Inc., No. 7680, 2011 WL 917018 (Vt. Pub. Serv. Bd. Mar. 11, 2011) (addressing petition to condemn private property to facilitate electricity distribution line and telephone lines); filings for approval of rate schedules, see, e.g., Establishing Rates for Power Sold, No. 8010, 2015 WL 777935 (Vt. Pub. Serv. Bd. Feb. 9, 2015) ; and petitions for CPGs, see, e.g., Burlington Sch. PV, LLC, No. 7646, 2010 WL 5139218 (Vt. Pub. Serv. Bd. Dec. 9, 2010) (addressing petition for CPG for electric-generation facility).
¶ 14. As we explain below, some of the proceedings that come before the Commission are essentially private disputes that affect only the interests of the parties to the proceeding. Other proceedings more broadly affect the public interest. Where a proceeding involves not only the interests of the parties, but also the interests of the public, the Commission may be responsible for independently evaluating what disposition of the matter is in the public interest.
¶ 15. The Commission made this distinction between its different types of proceedings in Ledgewood, No. 7424, 2012 WL 1453873 (Vt. Pub. Serv. Bd. April 23, 2012). That case arose out of a consumer complaint that alleged the defendants had been unlawfully operating a water-service business without a CPG. After the consumer and one of the defendants had agreed to a settlement, which the Department approved, those parties filed a stipulation of dismissal with the Commission. According to the Commission, "[t]he dismissal with prejudice was effective upon the filing with the [Commission] of the signed stipulation of dismissal with prejudice without further Order of the [Commission]."[8] Ledgewood, No. 7424, 2012 WL 1453873, at *1. However, the Commission further stated:
A stipulation of dismissal applies to a [Commission] proceeding, such as a consumer *1262 complaint, initiated by a private party that is akin to a civil court litigation (assuming that the complaint has not prompted an independent [Commission] investigation of a company subject to the [Commission's] jurisdiction). A stipulation of dismissal obviously would not have the effect of dismissing an investigation proceeding opened by the [Commission] or any proceeding in which the [Commission] is required to make an independent determination and decision, such as the statutory approvals required under 30 V.S.A. §§ 107, 108, 109, 231, 248, etc.
Id. at *1 n.1 (emphasis added). The Commission articulated the same rule in Julian, No. 5263, 1989 WL 571991 (Vt. Pub. Serv. Bd. June 13, 1989), in which a consumer complained about inadequate telephone service. In accepting the parties' stipulation of dismissal, the Commission reasoned:
[T]his docket resolves only the rights of two participating ... parties, with no decisions being made as to external effects on other ratepayers. Because of these facts, this case is unlike the stipulated resolution of a rate case, a proposed construction project, potential financing, a new service offering, or any other area where the rights of third parties or the general public could be affected. In such cases a hearing officer, on behalf of the [Commission], needs to affirmatively and actively investigate and judge the merits of the facts underlying a stipulated settlement.
Id. at * 1.
B. Rule 41(a)(1)(ii) and 3 V.S.A. § 809(d)
¶ 16. This distinction between different Commission proceedings and its role in these proceedings is important to whether Vermont Rule of Civil Procedure 41(a)(1)(ii) and 3 V.S.A. § 809(d) require the Commission to accept a joint stipulation or request for dismissal. Rule 41(a)(1)(ii) provides that "an action may be dismissed by the plaintiff without order of court ... by filing a stipulation of dismissal signed by all parties who have appeared in the action." In its usual application, "voluntary dismissal by stipulation under Rule 41(a)(1)(A)(ii) is effective immediately upon filing and does not require judicial approval." 9 C. Wright & A. Miller, Federal Practice and Procedure § 2363, at 448 (3d ed. 2008) (reporting federal courts' interpretation of Federal Rule of Civil Procedure 41(a)(1)(A)(ii), which is substantially similar to Vermont Rule 41(a)(1)(ii) ); see also Alma Realty Co. v. Sugerbush Valley Corp., 136 Vt. 406, 408, 392 A.2d 379, 380 (1978) (holding that stipulation filed in accordance with Rule 41(a)(1)(ii) "has the force and effect of a final judgment, without further order of court" (emphasis added)). Similarly, 3 V.S.A. § 809(d), which applies to administrative agencies, provides that "informal disposition may be made of any contested case by stipulation, agreed settlement, consent order, or default." We held in Gloss v. Delaware & Hudson Railroad that the parties to a contested Commission proceeding could effectively resolve the case by joint stipulation, pursuant to 3 V.S.A. § 809(d), without further order from the Commission. 135 Vt. 419, 420-21, 378 A.2d 507, 508-09 (1977).
¶ 17. But the rationale that ordinarily compels dismissal pursuant to Rule 41(a)(1)(ii) and 3 V.S.A. § 809(d) does not apply in administrative proceedings where the agency has an independent responsibility *1263 to protect the public good. As the Secretary of the U.S. Department of Labor reasoned in Bunn v. Foley, "in ordinary lawsuits brought by one private party against another private party, where the rights of other persons will not be affected, settlement of the dispute is solely in the hands of the parties," and therefore a "trial court judge must stand indifferent, and not interfere with the parties' unconditional right to a dismissal by stipulation." No. 89-ERA-5, 1989 WL 549902, at *1 (Dep't of Labor Office of Admin. App. Sept. 29, 1989) (quotations, citations, and alterations omitted). By contrast, in administrative proceedings that involve the rights of the public, the dispute is not "solely in the hands of the parties," ibr.US_Case_Law.Schema.Case_Body:v1">id., and thus it is not appropriate for the parties to have sole control over its disposition. Cf. id. at *2 (refusing to accept parties' stipulated dismissal without first assessing if underlying settlement was "just and reasonable and in the public interest" because, by federal statute, agency's role was to protect public, "not simply provide a forum for private parties to litigate their private employment discrimination suits").
C. This Proceeding
¶ 18. Specific to this matter, the Commission opened an investigation into petitioner's business proceedings pursuant to 30 V.S.A. §§ 30, 209, 247, 248, and 8010. Briefly, § 30 authorizes the Commission to impose civil penalties for violations; § 209(a)(3) provides that the Commission has jurisdiction "to hear, determine, render judgment, and make orders and decrees ... in all matters respecting ... the manner of operating and conducting any business subject to supervision under this chapter"; § 247 provides for an additional penalty for violations; § 248 sets forth the Commission's authority and procedures respecting electric-generation facilities; and § 8010 governs the current net-metering-approval process. The parties agreed at oral argument that this proceeding was not an administrative-citation proceeding pursuant to § 30(h), but rather an investigation under the more general provisions of § 30 into whether a penalty was warranted.
¶ 19. The proceedings here did not affect only the participating parties. On the contrary, these proceedings began as an investigation into petitioner's business practices and, more specifically, its failure to obtain Commission approval for some of its net-metering systems prior to construction-a failure that involved petitioner's customers and the public interest. The Legislature has determined that net-metering electricity systems are a matter of public concern that require government regulation, and it has explicitly entrusted the Commission, and only the Commission, with the authority to determine whether an electricity system will promote the public good. See id. § 248(a)(2)(B). Thus, the Commission had a responsibility to independently evaluate the parties' proposal, and it had authority to decide differently than the parties recommended in their stipulation.
¶ 20. Petitioner argues that Gloss requires a different result, but Gloss is consistent with our decision here. 135 Vt. at 420-21, 378 A.2d at 508-09. Gloss involved a landowner's complaint regarding the failure of a railroad to maintain fencing along the landowner's property, as statute required. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 420, 378 A.2d at 508. The dispute and the potential harm were essentially private, affecting only the landowner and the railroad company. Thus, when all the parties to the proceeding stipulated to dismissal, that effectively disposed of the matter. In contrast, this proceeding addressed the potential harm to petitioner's net-metering customers, its business practices with respect to those customers, its *1264 compliance with Commission procedures, and the Commission's ability to fulfill its statutory obligation to oversee net-metering electricity systems and companies. The proceeding did affect the public interest, and the Commission did have a responsibility to independently evaluate the matter. Therefore, consistent with Gloss, the joint stipulation of the parties did not effectively end the proceedings.
¶ 21. Petitioner also maintains that the Commission undermined Vermont's public policy favoring settlement in acting contrary to the recommendations of the joint stipulation. See Miller v. Flegenheimer, 2016 VT 125, ¶ 30, 203 Vt. 620, 161 A.3d 524 (recognizing Vermont's "strong public policy in favor of settling litigation"). It is appropriate for the Commission, like the courts, to support voluntary settlement. More to the point, the Commission's authority to disregard a settlement may be limited when the case "resolves only the rights of [the] participating ... parties, with no decisions being made as to external effects" on the public. Julian, No. 5263, 1989 WL 571991, at *1. But this is not one of those cases. Thus, declining to adopt the position of the parties in this case need not chill good-faith efforts in future Commission proceedings to resolve disputes between private parties through settlement.
IV. Filings
¶ 22. Petitioner contests the Commission's finding that "no filings were made." It urges us to characterize its registration filings as substantively complete, despite its failure to submit the forms to the Commission, because they had been sent to the interconnecting utilities and the Department. Petitioner contends that the plain language of § 219a and §§ 5.108 and 5.110(A) of Prior Rule 5.100 indicate that the Commission had no substantive role in the approval of net-metering systems; thus, absent an objection from the utility, the CPGs became effective despite no involvement from or even notice to the Commission. We generally defer to the Commission regarding the "interpretation of statutes it implements and its rules," GMPSolar-Richmond, 2017 VT 108, ¶ 19, 206 Vt. 220, 179 A.3d 1232, while also adhering to our duty "to examine a disputed statute independently," Cady Hill, 2018 VT 3, ¶ 20, 206 Vt. 430, 182 A.3d 53 (quotation omitted); see also Earth Constr., Inc. v. Agency of Transp., 2005 VT 82, ¶ 5, 178 Vt. 620, 882 A.2d 1172 (mem.) ("When interpreting statutes, the Court's task is to effectuate the express intent of the Legislature as evidenced by the plain, ordinary meaning of the language used." (quotation omitted)).
¶ 23. We note that the Commission determined that some of the affected systems were installed before January 1, 2017, when § 219a and Prior Rule 5.100 applied, and some were installed after January 1, 2017, when § 8010 and Current Rule 5.100 applied. Petitioner does not contest that finding on appeal. But petitioner focuses its argument on § 219a and Prior Rule 5.100 and asserts that "[v]irtually all of the 134 systems at issue fell under" § 219a and Prior Rule 5.100. The Commission's opinion, in contrast, considered the regulatory schemes before and after January 1, 2017. We review the merits of the Commission's decision under §§ 219a, 248, and 8010, and under Prior and Current Rule 5.100-the regulatory schemes in effect both before and after January 1, 2017. These statutes and rules all set the same requirements for registering net-metering systems, so there is no reason to do otherwise. Petitioner also notes that nearly all of the affected systems were smaller systems that fell under § 5.110(A) of Prior Rule 5.110, but a few were larger systems that fell under § 5.110(B), which follows a similar scheme *1265 as § 5.110(A). Petitioner makes no arguments based on the sizes of the systems. We also do not distinguish between the different systems and do not address § 5.110(B).
¶ 24. Under 30 V.S.A. § 248, "no company ... may begin site preparation for or construction of an electric generation facility ... unless the Public Utility Commission first finds that the same will promote the general good of the State and issues a certificate to that effect." § 248(a)(2).[9] Section 219a(c)(1) dictates that a system may "be installed ten days after the customer's submission to the [Commission] and the interconnecting electric company of a complete registration form," provided that "the ten-day period passes without delivery by the electric company of a letter that raises interconnection issues." (Emphasis added.) In that case, "a certificate of public good shall be deemed issued on the 11th day without further proceedings, findings of fact, or conclusions of law, and the customer may commence construction of the system." Id. Importantly, what triggers the streamlined process by which the CPG may be "deemed issued" is the filing of the registration form with the Commission. Id.
¶ 25. Likewise, the regulation implementing § 219a provides that "[u]pon filing the Net Metering Registration Form with the Commission, ... the applicant must also submit a copy of the form to the serving electric company and the Vermont Department of Public Service." Prior Rule 5.100, § 5.110(A)(1) (emphasis added). The rule continues:
If no letter raising interconnection issues is timely filed with the Commission by the interconnecting utility, a CPG shall be deemed issued by the Commission on the eleventh day following the filing of the Net Metering Registration Form, without further proceedings, findings of fact, or conclusions of law, and the applicant may commence construction of the system.
Id. § 5.110(A)(3) (emphases added). As under § 219a, Prior Rule 5.100 permits a CPG to be "deemed issued" if the interconnecting utility does not timely object, but first the applicant is required to file the registration form with the Commission. Id. § 5.110(A)(1), (3). Section 5.108 provides that the Commission waives its review of certain criteria required by § 248(b) ; the subsection does not apply until after the applicant has initiated the review process by filing the required registration form with the Commission. See id. § 5.108.
¶ 26. Section 8010 does not set registration requirements, instead leaving registration procedures to the Commission. 30 V.S.A. § 8010(c)(3). But the regulation implementing § 8010 provides the following: "A net-metering system ... must be registered with the Commission in accordance with the filing procedures and registration form prescribed by the Commission, *1266 " Current Rule 5.100, § 5.105(B) (emphasis added); "[u]pon filing the net-metering registration form with the Commission, the applicant must also cause notice of the form to be sent to the [interconnecting utility] and to the Department," id. § 5.105(D) (emphasis added); and "[u]nless a letter raising interconnection issues is timely filed with the Commission by the interconnecting utility, a CPG will be deemed issued by the Commission without further proceedings, findings of fact, or conclusions of law, and the applicant may commence construction of the system," id. § 5.105(C) (emphasis added). Section 5.101 dictates, "No person may commence site preparation for or construction of a net-metering system or convert an existing plant into a net-metering system without first obtaining a CPG under this Rule." Id. § 5.101.
¶ 27. According to petitioner, this statutory and regulatory scheme establishes that a system may be "deemed issued" a CPG without any Commission involvement whatsoever. We disagree. The statutes and rules relax the process for obtaining a CPG for qualifying systems, but they do not remove the Commission's jurisdiction over the net-metering-approval process or eliminate its role. On the contrary, they explicitly require an applicant to submit a registration form to the Commission as the start of the approval process. The procedure by which a system may be "deemed issued" a CPG does not begin until the applicant files the registration forms with the Commission. Petitioner's interpretation would place the authority to issue CPGs entirely within the hands of applicants and utilities. Nothing in the statutes or rules supports that result. The Commission retains sole authority to issue a CPG.
¶ 28. Nonetheless, petitioner claims error because Commission Rule 2.106 requires the Commission to "liberally construe[ ]" its rules "to secure the just and timely determination of all issues presented to the Commission." Rules of Practice, Rule 2.100, § 2.106, Code of Vt. Rules 30 000 2000 [hereinafter Rules of Practice 2.100], https://puc.vermont.gov/sites/psbnew/files/doc_library/2100-scope-and-construction-of-rules.pdf [https://perma.cc/7QZ3-NWF2]. But petitioner's failure to file registration forms was not a minor oversight; it was a substantial error. To adopt petitioner's view would not be a liberal construction-it would rewrite the statutory and regulatory scheme altogether. See Lecours v. Nationwide Mut. Ins. Co., 163 Vt. 157, 161, 657 A.2d 177, 180 (1995) (explaining that "we are constrained not to rewrite" statutory scheme).
V. Evidentiary Support
¶ 29. Petitioner maintains that the evidence fails to support the Commission's findings of violation and liability and the imposition of a civil penalty. "We accept the [Commission's] findings and conclusions unless the appealing party demonstrates that they are clearly erroneous, and, in reviewing those findings and conclusions, we defer to the [Commission's] particular expertise and informed judgment." Citizens Utils. Co., 171 Vt. at 450, 769 A.2d at 23.
¶ 30. Petitioner admitted in the Statement of Stipulated Facts that it installed at least 134 systems without first filing the appropriate registration forms with the Commission. This is evidence on which the Commission was entitled to rely. See City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 8, 186 Vt. 332, 980 A.2d 226 (relying on stipulated facts as evidence in evaluating merits of appeal); Travelers Ins. Co. v. Blanchard, 139 Vt. 559, 561, 433 A.2d 296, 297 (1981) (considering party bound to facts to which she stipulated); see also *1267 Christian Legal Soc'y Chapter v. Martinez, 561 U.S. 661, 677-78, 130 S.Ct. 2971, 177 L.Ed.2d 838 (2010) (rejecting assertion made on appeal that contradicted joint stipulation of facts, stating, "factual stipulations are formal concessions that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact" (quotation and alteration omitted)). Yet petitioner contends that this fact fails to establish that it installed the systems without first obtaining the required CPGs. According to petitioner, the systems were deemed to have received CPGs on the eleventh day after the registration forms were mailed to the utilities and the Department, and it did not proceed to construction until after that time. Therefore, petitioner argues that it did obtain CPGs for those systems prior to construction, and the record presents insufficient evidence to find otherwise.
¶ 31. As we have explained, the only way an applicant could start the streamlined CPG-approval process set forth in § 219a and Prior Rule 5.100 was by filing a registration form with the Commission. The same is true for Current Rule 5.100. By failing to do so, petitioner failed to take advantage of the net-metering-approval process and failed to obtain the necessary CPGs prior to beginning construction, in violation of § 248. Thus, the stipulated facts, statutes, and rules support the Commission's finding that petitioner installed at least 134 net-metering systems without first obtaining the required CPGs.[10]
¶ 32. Nor does it disturb our conclusion that the parties agreed in the stipulation that "no additional financial penalty [was] warranted." An agreement about whether the Commission should impose a penalty says nothing about whether the evidence shows that petitioner committed violations. Furthermore, petitioner is incorrect in asserting that the Department said there was no evidence of a violation. The Department stated that "the Commission may but need not find that [petitioner] violated Title 30." In any case, regardless of the Department's conclusion, the stipulation alone supports the Commission's finding.
¶ 33. Petitioner's additional argument that no evidentiary basis existed for the Commission to find liability and impose a penalty is without merit. The evidence supporting the Commission's finding that petitioner committed a violation also provides an evidentiary basis to find liability and to support the imposition of a penalty. See 30 V.S.A. § 30(a) ("A person, company, or corporation subject to the supervision of the Commission ... who violates a provision of ... section ... 248 of this title, or a rule of the Commission, shall be required to pay a civil penalty ...."). Given the evidence of a violation, the fact that petitioner explicitly refused to admit to liability in its stipulation is irrelevant.
VI. Treatment of Like Cases Alike
¶ 34. Petitioner maintains that the Commission failed to recognize that the filing requirement with regard to the Commission was merely ministerial, and that in failing to do so, it arbitrarily treated this case differently than it did similar cases. Petitioner cites Cady Hill, 2018 VT 3, 206 Vt. 430, 182 A.3d 53, and Seneca Mountain Wind, LLC, No. 7867, 2013 WL 4398965 (Vt. Pub. Serv. Bd. Aug. 9, 2013), in support. In Cady Hill, we reviewed the Commission's decision in Seneca Mountain Wind and compared it with the decision appealed *1268 in Cady Hill. 2018 VT 3, ¶¶ 22-27, 206 Vt. 430, 182 A.3d 53. We found the decision appealed in Cady Hill to be inconsistent with the Commission's decision in Seneca Mountain Wind, LLC. Id. We determined that the Commission should have accepted the petitioner's application as complete even though it omitted notice to two landowners, a requirement of § 248, because "it substantially complied with the application requirements." Id. ¶ 27. Petitioner argues that the Commission's decision is similarly inconsistent here and that the Commission should have considered its omission a nonsubstantial defect. Although normally we defer to agency decisions and its interpretations of its rules and enabling statutes, we will "find error when a regulation is inconsistently applied." Id. ¶ 21. "A fundamental norm of administrative procedure requires an agency to treat like cases alike." Id. (quotation omitted).
¶ 35. Again, we disagree that petitioner's error was nonsubstantial. The requirement to submit registration forms to the Commission is not ministerial. On the contrary, the entire process for the approval for net-metering systems starts with the submission of registration forms to the Commission. See 30 V.S.A. § 219a(c)(1) ; Current Rule 5.100, § 5.105; Prior Rule 5.100, § 5.110(A)(1). By statute, the Commission is entrusted with the sole authority to issue a CPG, whether the CPG is "deemed issued" or directly ordered by the Commission. See 30 V.S.A. § 219a(c)(1) (2016)); 30 V.S.A. § 8010 ; see also 30 V.S.A. § 248. Cady Hill, which addresses slight errors in CPG applications, is inapposite.
¶ 36. Petitioner also contends that the Commission arbitrarily treated this case differently than it did similar investigations cases pursuant to 30 V.S.A. § 30. It cites to two cases in which the Commission dismissed investigations following the stipulations of the parties: In re Deerfield Wind, LLC, No. 17-4311-INV, 2018 WL 1737633 (Vt. Pub. Util. Comm'n Apr. 4, 2018), and In re Peck Electric, No. 17-2591-INV, 2018 WL 1181767 (Vt. Pub. Util. Comm'n Mar. 1, 2018). In Deerfield Wind, a landowner filed a complaint with the Commission requesting that Deerfield Wind, LLC, repair alleged blasting damages to his home. The Commission opened an investigation into the matter. A few months later, the landowner and Deerfield Wind, LLC, filed a motion to close the investigation, which the Department of Public Service supported. The motion reported that the parties had agreed to a settlement. The Commission accepted the motion because "no party to date has presented clear evidence of a violation of the CPG."[11] No. 17-4311-INV, 2018 WL 1737633, at *2. The Commission emphasized that "[h]ad such information been presented," it would have been appropriate for "the Commission [to] conduct such further process necessary to determine an appropriate penalty." Id.
¶ 37. In Peck Electric, a landowner and the Town of New Haven complained that Peck Electric had failed to install and maintain adequate vegetative screening, as required by its CPG. No. 17-2591-INV, 2018 WL 1181767, at *1. Several months later, the parties filed a stipulation and proposed order. In the stipulation, the parties agreed to a revised aesthetic mitigation plan addressing the vegetative screening. The stipulation also advised that Peck Electric did not accept liability; the other parties did not concede there was no violation; and no financial penalty was appropriate. As in Deerfield Wind, the Commission accepted the stipulation because "no *1269 party... has presented clear evidence of a violation of the CPG," and additional investigation would have been warranted "[h]ad such information been presented in this proceeding." Id. at *2.
¶ 38. Deerfield Wind and Peck Electric are readily distinguishable from the present case. In both Deerfield Wind and Peck Electric, the proceeding produced no clear evidence of a violation, whereas here the stipulation supplied clear evidence that petitioner had constructed at least 134 net-metering systems without first filing the required registration forms with the Commission. As we have stated, that evidence alone supports a finding that petitioner violated 30 V.S.A. § 248. Given that distinction, the Commission did not act arbitrarily in refusing to close the investigation here.
VII. Mandatory Duty to Permit Filing
¶ 39. As an alternative argument, petitioner claims that Rule 2.208 requires the Commission to allow petitioner "to cure any defect or insufficiency" in its filing and that it abused its discretion by failing to afford petitioner this opportunity. Rules of Practice, Rule 2.200, § 2.208, Code of Vt. Rules 30 000 200 [hereinafter Rules of Practice 2.200], https://puc.vermont.gov/sites/psbnew/files/doc_library/Commission% 20Rule% 202.200% 20% 289-15-18% 29% 20Adopted% 20CLEAN.pdf [https://perma.cc/99YD-5L7N]; see also In re Halnon, 174 Vt. 514, 517, 811 A.2d 161, 165 (2002) (mem.) (stating that abuse of discretion "occurs when that discretion is exercised on grounds or for reasons clearly untenable, or to an extent clearly unreasonable").
¶ 40. This argument has no merit. As we have explained, the net-metering process begins with filing the registration forms with the Commission. Until that is done, there is no filing, and thus no defective filing, that can be cured. See also Rules of Practice 2.200, § 2.204 (establishing that "filing occurs only upon receipt by the clerk or the Commission"). The Commission had no obligation to allow petitioner to "cure" its omission after it had violated § 248 by constructing net-metering systems without first obtaining CPGs.
VIII. Waiver of Strict Application of Rules
¶ 41. Petitioner claims that the Commission abused its discretion by failing to waive "the strict application of its rules," pointing to Commission Rules 1.200 and 2.107.[12] See General Provisions, Rule 1.200, § 1.200, Code of Vt. Rules 30 000 1000, https://puc.vermont.gov/sites/psbnew/files/doc_library/1100-definitions_0.pdf [https://perma.cc/ 5QBV-6YD7]; Rules of Practice 2.100, § 2.107. Under Rule 1.200, "the Commission may for good cause grant exceptions in particular cases to any provision of these rules" unless the exception is "prohibited by statute or by the terms of the rule." Likewise, Rule 2.107 states, "In order to prevent unnecessary hardship or delay, in order to prevent injustice, or for other good cause, the Commission may waive the application of rule upon such conditions as it may require, unless precluded by the rule, itself, or by statute."
*1270 Petitioner argues that good cause exists here.
¶ 42. It is questionable whether the Commission could have waived the requirement at issue here, at least with regard to the systems governed by § 219a. For those systems, the registration-form-filing requirement was set by statute, not only by rule. See 30 V.S.A. § 219a. The Commission cannot act in a way that contradicts the statutes it implements. See Cady Hill, 2018 VT 3, ¶ 21, 206 Vt. 430, 182 A.3d 53 (stating that Commission cannot interpret or apply regulation "in a way that exceeds the statutory mandate under which the regulation was promulgated"); In re Vt. Elec. Power Producers, Inc., 165 Vt. 282, 289, 683 A.2d 716, 719 (1996) ("The [Commission] is a body of special and statutory powers, as to which nothing is presumed in favor of its jurisdiction. Consequently, the [Commission's] powers include only those expressly granted by the Legislature and such incidental powers as are necessarily implied to carry out its express grant." (citation omitted)).
¶ 43. Assuming for the sake of argument that the Commission had authority to waive the filing requirement, we review the Commission's refusal to grant a waiver for abuse of discretion. See In re LK Holdings, LLC, 2018 VT 109, ¶ 34, --- Vt. ----, 201 A.3d 373 (treating Commission decision declining to waive its rule as discretionary action and reviewing for abuse of discretion); Halnon, 174 Vt. at 517, 811 A.2d at 165 (stating abuse-of-discretion standard); see also Cady Hill, 2018 VT 3, ¶ 15, 206 Vt. 430, 182 A.3d 53 ("[W]e accord a strong presumption of validity to the Commission's orders." (quotation and alteration omitted)). The Commission acted well within its discretion in refusing to grant a waiver based on the law and facts in this case. Cf. In re L.R.R., 143 Vt. 560, 562-63, 469 A.2d 1173, 1175 (1983) (holding that we will not set aside trial court's discretionary decision "simply because a different result might have been supportable, or because another court might have reached a different conclusion," and instead requiring defendant to show abuse of discretion).
IX. Petitioner's Intent
¶ 44. Finally, petitioner maintains that the Commission impermissibly ignored petitioner's intent. This argument is based on 30 V.S.A. § 30(a)(1), which lists several types of violations that would support a civil penalty. One type of violation occurs when a "person, company, or corporation subject to the supervision of the Commission ... fails, other than through negligence, to furnish any returns, reports, or information lawfully required by it." Id. Another type of violation occurs when a "person, company, or corporation subject to the supervision of the Commission ... violates a provision of ... section ... 248 of this title, or a rule of the Commission." Id.; see also Meteorological Tower, 2019 VT 20, ¶¶ 36-39, --- Vt. ----, 210 A.3d 1230 (explaining 30 V.S.A. § 30(a)(1) applies to violations of § 248 and discussing § 30(a)(2), § 30(b), and § 30(c) in detail). According to petitioner, the violations alleged here fall into the first category quoted above. By the plain terms of the statute, such a violation arises only if the corporation fails to furnish required "returns, reports, or information" and it does so "other than through negligence." Id. Thus, petitioner reasons, the Commission erred in finding a violation because petitioner's error was unintentional.
¶ 45. Petitioner's argument fails because it is the second category of violation quoted above, not the first, that applies here. Petitioner is again attempting to depict its error as a nonsubstantial, clerical error-a mere failure to provide "returns, reports, *1271 or information"-and this misconstrues the facts. The failure to file registration forms here was not a clerical error. It was a substantive violation of § 248. The second category applies, which says nothing about whether the violation was intentional. The Commission did not err in finding a violation regardless of whether petitioner's error was unintentional.
Affirmed.

SolarCity Corporation is now known as Tesla Energy Operations and is a wholly owned subsidiary of Tesla, Inc.
The Public Service Commission's predecessor was the Railroad Commission, which was renamed the Public Service Commission in 1908. 1908, No. 116, § 1; Sabre v. Rutland R.R., 86 Vt. 347, 361, 85 A. 693, 699 (1913). The Legislature changed the Commission's name to the Public Service Board in 1959. 1959, No. 329, § 39(a). In 2017, the Legislature changed the name from the Public Service Board to the Public Utility Commission. 2017, No. 53, §§ 9-13. For clarity, we refer to it as the Commission throughout this opinion.

The act repealing § 219a provided that "§ 219a and rules adopted under that section shall govern applications for net metering systems filed prior to January 1, 2017." 2013, No. 99, § 10(f).

All references to § 219a are to 30 V.S.A. § 219a (2016).

Current Rule 5.100 became effective July 1, 2017, following the installations at issue in this case. From January 1, 2017, through June 30, 2017, an interim version of Rule 5.100 (Interim Rule 5.100) was in effect. Revised Net-Metering Program, Rule 5.100, https://puc.vermont.gov/sites/psbnew/files/doc_library/5100-PUC-attachment-a-onreconsideration_0.pdf [https://perma.cc/QKD2-S8LN]. The provisions at issue here are identical in Current Rule 5.100 and Interim Rule 5.100, so we do not distinguish between the interim and current rules when referencing net-metering regulations in effect following the repeal of § 219a.

Section 8 of Title 30 authorizes the Commission to appoint a hearing officer to "inquire into and examine any matter within the jurisdiction of the Commission," § 8(a), and to "report his or her findings of fact in writing to the Commission in the form of a proposal for decision," § 8(c). The judgment may be rendered only by the Commission. Id.

Petitioner also claims that the Commission erred by ignoring its authority under 30 V.S.A. § 30 to not impose a penalty at all, even after finding a violation. Without commenting on whether the Commission has authority under § 30 to not impose a penalty, despite a finding of a violation, we conclude that this argument is not relevant. The Commission explicitly did not base the penalty on a determination that the statute requires one whenever a violation is found. Rather, the Commission imposed the penalty because it thought it was appropriate to do so based on the facts of the case.

Where another Commission rule or order does not control, the Vermont Rules of Civil Procedure apply to Commission proceedings pursuant to Rules of Practice, Rule 2.100, §§ 2.103-2.104, Code of Vt. Rules 30 000 2000 [hereinafter Rules of Practice 2.100], https://puc.vermont.gov/sites/psbnew/files/doc_library/2100-scope-and-construction-of-rules.pdf[https://perma.cc/7QZ3-NWF2].

The Commission's opinion was written by a hearing officer and then adopted by the Commission without modification. See id. at *2 ; see also 30 V.S.A. § 8. The same method was followed in In re Julian, No. 5263, 1989 WL 571991 (Vt. Pub. Serv. Bd. June 13, 1989).

Petitioner claims that 30 V.S.A. § 248 does not govern here, and instead § 219a operates alone. Petitioner did not raise this argument below, so normally we would not consider it. In re Lorentz, 2003 VT 40, ¶ 5, 175 Vt. 522, 824 A.2d 598 (mem.) ("We will not address arguments made for the first time on appeal."). However, in light of our reasoning in In re Construction & Operation of a Meteorological Tower, 2019 VT 20, --- Vt. ----, 210 A.3d 1230, we clarify here that § 248 does apply. Section 248 prohibits any construction or site preparation for a grid-connected electricity-generating project without first obtaining a CPG. 30 V.S.A. § 248(a)(2). Here petitioner failed to comply with the statutory and regulatory requirements for obtaining a CPG prior to constructing solar-electricity systems. Therefore, petitioner violated § 248 when it constructed the solar-electricity systems. For a more extensive discussion, see Meteorological Tower, 2019 VT 20, ¶ 20 n.5, --- Vt. ----, 210 A.3d 1230.

Petitioner contends that the exhibits and testimony filed with the Commission after the hearing officer's request for additional briefing do not support the Commission's findings and conclusions. Because the stipulated facts alone support the Commission's findings and conclusions, we do not consider whether the exhibits and testimony provide evidentiary support.

Deerfield Wind, No. 17-4311-INV, 2018 WL 1737633, at *2, and Peck Electric, No. 17-2591-INV, 2018 WL 1181767, at *2, were written by hearing officers and then adopted by the Commission without modification. See 30 V.S.A. § 8.

As the Commission notes on appeal, petitioner stipulated that initially it did not request a waiver. Petitioner first raised the waiver issue in its response to the hearing officer's request for additional briefing. Although the hearing officer and the Commission treated petitioner's argument as a request for a waiver, on appeal the Commission argues that petitioner never asked for a waiver because it did not do so initially. We need not decide this issue because, regardless, the Commission did not err in declining to waive the filing requirements.